UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANK GRAHAM,

                          Plaintiff,

        -vs-                                      13-CV-705JTC

CORRECTION OFFICER JEREMY PETERS,
CORRECTION OFFICER SCOTT CORDIA,
CORRECTION OFFICER ROBERT S. MACCHEYNE,
ASAT PA T. RODABAUGH,

                          Defendants.

---

APPEARANCES:        STOLL, GLICKMAN & BELLINA, LLP (CYNTHIA HELEN CONTI-COOK, ESQ., Of Counsel), Brooklyn, New York, Attorneys for Plaintiff.

                               HON. ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF THE STATE OF NEW YORK, (BENJAMIN K. AHLSTROM, ASSISTANT ATTORNEY GENERAL, Of Counsel), Buffalo, New York, Attorneys for Defendant.

## **INTRODUCTION**

On January 18, 2013, plaintiff, Frank Graham, filed a complaint alleging the violation of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and seeking damages pursuant to 42 U.S.C. § 1983. Specifically, plaintiff alleged that, in retaliation for journal entries he made while a parolee at a boot-camp style drug treatment program, he was subjected to cruel and unusual punishment and excessive force, and was later brought up on false disciplinary charges resulting in eight months of additional custody. Item 1. He alleged claims for the use of excessive force and deliberate indifference/failure to intervene under the Eighth Amendment,

deprivation of due process under the Fourteenth Amendment, and retaliation under the First Amendment. He also alleged that the defendants acted in furtherance of a conspiracy. Presently before the court is defendants' partial motion to dismiss all but plaintiff's claim for excessive force. Item 6.

## BACKGROUND and FACTS

According to the complaint (Item 1), on or about January 19, 2012, plaintiff was a parolee in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS") at the Willard Treatment Center ("Willard"). Item 1, ¶ 7. On that date, he was called into the office of defendant Rodabaugh, a counselor at Willard, in the presence of defendant Peters. *Id.,* ¶ 18. Defendant Rodabaugh read aloud passages from plaintiff's journal, which plaintiff had been required to keep as part of his treatment program. *Id.,* ¶ 19. The passages questioned the competency of the staff at Willard. As defendant Rodabaugh questioned plaintiff about the journal, defendant Peters nudged plaintiff and used racial epithets in an effort to provoke a confrontation with plaintiff. *Id.* Finally, defendant Peters struck plaintiff on the head with his radio and called to the other defendants, who entered the room and "repeatedly stomped, hit, punched and kicked plaintiff on the ground." *Id.* Plaintiff alleged that the defendants failed to intervene to prevent the assault. *Id.,* ¶ 26. He also alleged that the defendants "were engaged in a joint venture ... to violate plaintiff's rights in retaliation for his constitutionally protected criticism of Willard staff and program." *Id.,* ¶ 30.

The defendants subsequently initiated disciplinary proceedings against plaintiff.

2

He was found guilty, but the charges were eventually reversed. Item 1, ¶ 23. Plaintiff alleged that the defendants conspired to falsely accuse plaintiff of initiating the assault and made false statements in reports and hearings. *Id.,* ¶ 22. Instead of being released in January 2012, plaintiff remained in custody until September 2012. *Id.,* ¶ 24.

In lieu of an answer, on August 9, 2013, defendants filed a partial motion to dismiss, arguing that plaintiff's due process claim fails to identify any denial of required process, the failure to intervene claim lacks any factual support, the First Amendment retaliation claim lacks the required element of protected activity, and plaintiff failed to adequately plead a conspiracy. Item 6. Plaintiff filed a response to the motion on September 9, 2013 (Items 8, 9), and the defendants filed a reply on September 13, 2013. Item 10. The court has determined that oral argument is unnecessary. For the following reasons, the defendants' motion is granted in part.

## DISCUSSION

**1. Standard on a Motion to Dismiss**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The court should not dismiss the complaint if the plaintiff has provided "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

**2. Due Process Claim**

In his complaint, plaintiff alleged that he was deprived of procedural due process in that the defendants initiated disciplinary proceedings against him based on false reports of the incident of January 19, 2012. As a result, instead of being released from the Willard drug treatment program in January 2012, he remained in custody until September 2012.

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974). Under *Wolff*, the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing

4

a defense. *Wolff*, 418 U.S. at 564–70; *see also Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir. 1988). To pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff's due process claim is primarily based on his allegation that the charges against him were false. He denies any role in provoking the alleged assault and states that the disciplinary charges were eventually dismissed. However, even if the charges were false, this does not amount to a due process violation as long as plaintiff was afforded a fair opportunity to refute the charges. *See Doe v. Selsky*, –F.Supp.2d–, 2013 WL 5311221, *1 (W.D.N.Y. September 20, 2013); *Livingston v. Kelly*, 423 Fed.Appx. 37, 40 (2d Cir. 2011). Plaintiff admits he was given the opportunity to contest the charges, as he alleged that the charges were eventually reversed "because the hearing officer failed to investigate [plaintiff's] allegations of retaliation ...." Item 1, ¶ 23. There is no indication in the complaint that plaintiff was deprived of any of the due process procedures required by *Wolff*. Accordingly, plaintiff's due process claim regarding the allegedly false disciplinary charges is dismissed.

In addition, plaintiff argues that his parole was wrongfully revoked and that he was held until September 2012 without due process. In his memorandum of law in opposition to the motion, plaintiff states that he "never had any opportunity to contest [the] ... revocation of his parole status and Willard release date." Item 8, p. 5. In his complaint, plaintiff alleged that, as a result of the false disciplinary charges, he was held in custody until September 2012. He did not specifically allege in the complaint that he was not provided an opportunity to challenge the revocation of his parole status or

5

Willard release date.

At this juncture of the proceedings, the court declines to read into the complaint an alternative theory of liability under the Due Process Clause of the Fourteenth Amendment. While a parolee facing the revocation of release is entitled to ceratin procedural rights, including notice of the alleged violations and an opportunity to be heard, *see Gagnon v. Scarpelli,* 411 U.S. 78, 786 (1973), plaintiff has failed to allege that any of the named defendants played any role in a decision to revoke plaintiff's parole status without a hearing and to extend his custody until September 2012. As personal involvement of the defendants is a prerequisite to liability under section 1983, *see Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994), the court finds that plaintiff has failed to allege a facially plausible claim that the named defendants violated plaintiff's due process right to a parole revocation hearing.

### 3. Failure to Intervene

Defendants argue that plaintiff's claim for failure to intervene is insufficient as a matter of law. Plaintiff has alleged that the "[d]efendants failed to intervene to prevent the assault on, or prevent further injury to, [plaintiff]." Item 1, ¶ 26. Additionally, plaintiff alleged that "[b]y failing to intervene in order to stop the assault, the defendants demonstrated a deliberate indifference to a substantial risk of serious harm to [plaintiff]." *Id.,* ¶ 27.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *accord, Curley*

6

v. *Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Mowry v. Noone*, 2004 WL 2202645, at *4 (W.D.N.Y. September 30, 2004) ("Failure to intercede results in liability where an officer observes the use of excessive force or has reason to know that it will be used."). To establish liability on the part of a defendant under this theory, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle*, 2011 WL 5975027, *4 (N.D.N.Y. November 29, 2011) (citing *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008)).

In his complaint, plaintiff alleged that he was called into the office of defendant Rodabaugh in the presence of defendant Peters. *Id.,* ¶ 18. Defendant Rodabaugh read aloud passages from plaintiff's journal which questioned the competency of the staff at the Willard Treatment Center. *Id.,* ¶ 19. As defendant Rodabaugh questioned plaintiff about the journal, defendant Peters nudged plaintiff and used racial epithets in an effort to provoke a confrontation with plaintiff. *Id.* Finally, defendant Peters struck plaintiff on the head with his radio and called to the other defendants, who entered the room and "repeatedly stomped, hit, punched and kicked plaintiff on the ground." *Id.*

Accepting, for purposes of the motion, the truth of plaintiff's allegations, the court finds that plaintiff has sufficiently alleged a claim for failure to intervene against defendant Rodabaugh. According to the complaint, defendant Rodabaugh watched as defendant Peters attempted to physically and verbally provoke plaintiff into a

7

confrontation. When plaintiff refused to react, Peters assaulted plaintiff and called for back-up from the other defendants. Plaintiff has alleged that Rodabaugh observed the interaction and unprovoked assault, had an opportunity to intervene, but took no reasonable steps to prevent the harm.

As for the remaining defendants, it appears from the complaint that they entered the room after the assault had begun and assisted defendant Peters in what appeared to be an altercation with plaintiff. There are no allegations that these remaining defendants saw defendant Peters initiate the alleged assault or were aware that the plaintiff's rights were being violated. Likewise, there is no indication that the remaining defendants had a realistic opportunity to intervene and prevent the harm to plaintiff. Accordingly, the claim for failure to intervene is dismissed except as to defendant Rodabaugh.[1]

**4. First Amendment Retaliation**

Plaintiff alleges that defendants retaliated against him in violation of his rights under the First Amendment. To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) his speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); *Tafari v. McCarthy*, 714 F.Supp.2d 317,

---

[1] Plaintiff has not alleged that defendant Rodabaugh participated in the alleged assault. As the allegation of a defendant's personal involvement in any alleged constitutional deprivation is a prerequisite to a damage award under section 1983, *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994), the excessive force claim as against defendant Rodabaugh is dismissed.

347 (N.D.N.Y. 2010).

In this case, plaintiff argues that his journal entries, which were made as a part of his drug treatment program, were protected speech. It is settled law that the filing of prison grievances and lawsuits are constitutionally protected activities. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996). "Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)); *see also Ahlers v. Grygo*, 2009 WL 3587483, *4 (E.D.N.Y. October 27, 2009) ("[r]eporting the wrongdoing of corrections officers and other prison officials ... qualifies as protected speech under the First Amendment"). Similarly, it has been found that a letter to an attorney seeking representation with respect to alleged sexual assault constitutes protected speech, *Garcia v. Watts,* 2013 WL 599750, * 4 (S.D.N.Y. February 15, 2013), as does the circulation and submission of an inmate petition. *Farid v. Goord,* 200 F.Supp.2d 220, 236-37 (W.D.N.Y. 2002). In contrast, a "verbal confrontation" between an inmate and a corrections officer does not implicate any constitutional right. *See Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S.D.N.Y. 1989).

There is no support in case law for plaintiff's position that his journal entries, in which he complained about the staff and program at the Willard Treatment Center, constitute protected speech. Plaintiff's journal, which was an outlet for his personal reflections, including criticism of the staff and program, was not prepared or submitted

9

as part of any effort to pursue or redress grievances. Accordingly, as plaintiff has failed to allege any protected speech or conduct, the First Amendment claim is dismissed.

**5. Conspiracy**

Defendant argues that plaintiff has failed to allege any facts in support of a purported conspiracy, and that the claim is wholly conclusory and should be dismissed. Plaintiff argues that he should be allowed to pursue discovery to show that the "defendants had the opportunity to commit to a plan to violate his constitutional rights in retaliation for" his criticism of the Willard facility staff. Item 8, p. 11.

In order to support a claim for conspiracy under section 1983, there must be "(1) an agreement ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002); *Cusamano v. Sobek*, 604 F.Supp.2d 416, 468 (N.D.N.Y. 2009). Here, plaintiff has alleged that the defendants violated his constitutional rights, and has then simply added a conclusory allegation that those violations were committed pursuant to a conspiracy. While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." *Anilao v. Spota*, 774 F.Supp.2d 457, 512–13 (E.D.N.Y. 2011) (citations omitted). Plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F.Supp.2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy

claim. *Ciambriello*, 292 F.3d at 325.

Here, plaintiff has failed to allege sufficient facts to support a viable conspiracy claim between defendants in their alleged assault, failure to protect, and retaliation for the journal entries. Additionally, even if the conspiracy allegations were sufficiently pled, the conspiracy claim would fail under the doctrine of "intracorporate conspiracy." Under this doctrine, "the officers, agents and employees of a single corporate entity, each acting within the scope of [his or] her employment, are legally incapable of conspiring together." *Little v. City of New York,* 487 F.Supp.2d 426, 441-42 (S.D.N.Y. 2007) (dismissing section1983 conspiracy claim against two police officers who worked for the City of New York pursuant to intracorporate conspiracy doctrine); *see also Liner v. Fischer,* 2013 WL 3168660, *2 n.12 (S.D.N.Y. June 24, 2013) (dismissing section 1983 conspiracy claim where all defendants were DOCCS employees acting within the scope of employment), *Report and Recommendation Adopted by,* 2013 WL 4405539 (August 7, 2013). The intracorporate conspiracy doctrine essentially bars conspiracy claims against employees of entities such as DOCCS (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's "scope of employment" exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed. *See Cusamano v. Sobek,* 604 F.Supp.2d at 469–70 (collecting cases). After carefully reviewing plaintiff's complaint and drawing all reasonable inferences in his favor, the court concludes that plaintiff has not alleged any facts plausibly suggesting that the defendants acted in pursuit of some purely personal interests apart from the interests of

11

the Willard Treatment Center. Accordingly, the defendants' motion to dismiss the conspiracy claim is granted.

## **CONCLUSION**

Defendants' motion to dismiss is granted in part. Plaintiff's due process, First Amendment, and conspiracy claims are dismissed, as is the failure to intervene claim, except as to defendant Rodabaugh. The excessive force claim, for which defendants did not seek dismissal, is dismissed as to defendant Rodabaugh only, for plaintiff's failure to allege defendant Rodabaugh's personal involvement in the alleged assault. Defendants are directed to file an answer to the remaining claims, for excessive force in violation of the Eighth Amendment against all defendants except defendant Rodabaugh, and for the failure to intervene against only defendant Rodabaugh, in accordance with the Rules of Civil Procedure.

So Ordered.

\_\_\_\_\_\s\ John T. Curtin\_\_\_\_
JOHN T. CURTIN
United States District Judge

Dated:   October 30        , 2013
p:\pending\2013\13-705.oct9.2013

12